PEORIA TARGET CO. *v.* CLEVELAND TARGET CO. *et al.*

(*Circuit Court, N. D. Ohio, E. D.*    May 27, 1890.)

**1. PATENTS FOR INVENTIONS—NOVELTY—INVENTION—TARGETS.**
The claim of letters patent No. 334,782, granted January 26, 1886, to Fred Kimble, for an improvement in making targets, which is alleged to have been infringed by defendants, is for "the process of making targets which consists in mixing with melted pitch a quantity of either plaster of Paris or whiting, and then pouring the composition so formed into suitable moulds." Letters patent granted to one Woodward, March 9, 1880, cover the same ingredients and the same process, with the sole difference between the products that Woodward's was intended to be strong while Kimble's was to be fragile; the result in the latter case being obtained by varying the proportions as might be necessary. *Held* that, as this required only "the accepted skill of the calling," it involved neither invention nor discovery, and hence Kimble's patent is invalid.

**2. SAME—NOVELTY AND UTILITY—EVIDENCE.**
The speedy and general adoption by the public of a patented device is not conclusive on the question of novelty and utility, where it can be accounted for on grounds peculiar to the course of trade; nor can such adoption ever sustain a patent in which the court fails to find invention.

In Equity.    On bill for infringement of patent.
*Poole & Brown,* for complainant.
*Webster & Angell,* for defendants.

RICKS, J.    This suit is for infringement of letters patent **334,782,** granted to Fred Kimble, January 26, 1886, for a new and useful improvement in making targets. Prior to January 11, 1888, the patentee, Kimble, sold and conveyed to complainant all his right, title, and interest to said patent, and all rights of action thereunder, which assignment was duly recorded in the patent-office. Kimble's claim is stated in his application as follows:

(1) As a new article of manufacture, a target composed of pitch and plaster of Paris or whiting, in the proportion specified. (2) The process of making targets, which consists in mixing with melted pitch a quantity of either plaster of Paris or whiting, and then pouring the composition so formed into suitable moulds, substantially as described.

He says his invention "relates to that class of targets known as 'clay pigeons,' 'blackbirds,' and the like, made usually of clay or other fragile material, and adapted to be thrown through the air from a suitable trap to be shot at by marksmen, and has for its object the production of a target which will be fragile, so as to be readily shattered when struck by a pellet of shot, to which it may be subjected, and which will be cheap." He then describes the process of making the target from pitch and plaster of Paris. The proportions are not limited. He says he adds to each 100 pounds of pitch from 25 to 75 pounds of plaster of Paris, and mixes the ingredients while heated. The quantity of plaster of Paris or whiting used depends upon the amount of oil remaining in the pitch after boiling. He says he uses either plaster of Paris or whiting, at will. The patent is on the composition of which the target is made.

The defenses are several: (1) That the target described by Kimble in his patent is not novel, and the process described in his second claim

is not novel. (2) That neither the process nor the article specified in the two claims of the patent constitutes a patentable invention. (3) Non-infringement. (4) No recovery for the years 1886 and 1887, if the patent should be sustained, because of the provisions of a pooling contract, which was, in legal effect, a license covering the manufacture and sale for those years.

The patent sued upon embraces only the composition of the target. The three respects in which the particular composition is claimed to be superior to all others are that it is fragile, that it will not be affected by any atmospheric changes, and that it is cheap. These three qualities the patentee has secured for his product, and it has been accepted and used by the public as meeting a general and extensive demand. Has the complainant shown his composition to be novel, and to be an invention or discovery, within the meaning of the constitution and the statute? Nothing can be claimed for the shape of the target. Targets of a similar form were in use and covered by patents prior to the Kimble patent. Was the composition new? It seems clear from the patents in evidence that very many compounds of rosin, or coal tar, or pitch with sand, coal ashes, gypsum, or other equivalent ingredients, were known, made, and used before the Kimble invention. The ingredients were therefore not new. The Kimble patent makes the proportions in which the ingredients of pitch and plaster of Paris or whiting are to be used very indefinite. It depends upon the amount of oil left in the pitch after the boiling, as to the quantity of plaster of Paris to be used. The applicant purposely left the proportions indefinite, so that there can be nothing claimed for the exact quantities of the composition necessary for a successful product. All that was required was that the proportions should be varied to secure the three qualities of fragility, resistance to atmospheric changes, and cheapness. The Woodward patent of March 9, 1880, was intended to produce a composition of matter which could be moulded into various articles of fine texture, glazed surface, very cheap and strong. The ingredients described were gypsum and rosin mixed under heat. The right to use pitch as a substitute for rosin was claimed in the patent. The specifications and claims set forth in that patent cover the very product now under consideration in this patent. The ingredients are exactly the same, and the product described covers the target in this case. The only change effected is that the target produced under the Kimble patent is fragile, while the moulded product of the Woodward patent is strong and substantial. A slight change in the proportions of the ingredients produced the desired result. This was not a discovery within the meaning of the patent laws. It was not an invention. It was merely combining materials described in several earlier patents, and conspicuously in the Woodward patent, and this combination was not made on any scientific basis, or any fixed proportion, but was to be varied as the quantity of oil in the pitch might make necessary. This requires no scientific knowledge. It is "but the accepted skill of the calling, and involves only the exercise of the ordinary faculties of reasoning upon the material supplied by special knowledge, and the faculty of manipulation which

results from its habitual and intelligent practice," and comes within the rule defined by Mr. Justice MATTHEWS in *Hollister* v. *Manufacturing Co.*, 113 U. S. 59, 5 Sup. Ct. Rep. 717. In the case of *Gardner* v. *Herz*, 118 U. S. 180, 6 Sup. Ct. Rep. 1027, it was held that where the mode of construction of the article claimed, the material employed, the form after construction, and the purpose for which it was to be used had been described separately in earlier patents, although the article itself had never been described in any single patent, and to that extent was novel and was of great utility, it did not require invention to produce it.

Applying these principles, it seems to the court clear that, in view of all the testimony, there was no patentable invention in either claim of the Kimble patent. Kimble so altered the proportions, and so skillfully manipulated the ingredients in mixing and heating them, as to secure the exact fragility in the target needed, and in this he was a pioneer. Others readily adopted his process, and profited by his success, as he had profited by the ingredients and process suggested in the Woodward patent. His imitators had a right to do this, if his composition was not invention or discovery. I have given full force and effect to the claim urged by complainant's counsel that the speedy and general acceptance by the public of the Kimble target is strong proof of novelty and utility. This fact had great weight with me, and should always have with courts, unless such general use can be explained upon reasons which do not reach the novelty or utility of the product. In this case the Kimble target was put upon the market about the time when new and popular traps were introduced which gave to the target a flight and movement much more resembling that of live pigeons than any before used. These improved traps, and the improved nature of the targets, combined to introduce them both into very general use, so that the manufacture and sale of targets has been of phenomenal growth. This is also frequently the result of shrewd, energetic business management. The fact that targets of different shape, but of similar composition, were used before the Kimble patent is established. The form of the targets, and the manner of throwing them into the air, were both unacceptable to the public interested in such sport. The use of them was local, and very limited, as compared with the present use. Want of capital, lack of business management, may have had much to do with this. But the change in the form of the target, and the introduction of improved traps, coming contemporaneously, afforded the energetic and wealthy corporations the opportunity to push the manufacture and use of both products, and they have certainly done it in the two cases now before me. The fact appears in evidence that about 7,000,000 of these targets are annually made and sold by the complainant and defendant corporations. In 1884 less than half a million were used. If I could not satisfactorily account for such unexampled success in introducing this patented product to the public upon grounds other than those directly relating to its novelty and utility, I should find that fact much more persuasive than it seems to me now, in consideration of the other reasons for its general acceptance and use to which I have referred. But, even if this general and speedy adoption

of the patented article could not be accounted for upon reasons other than those relating to its novelty and utility, it would still be the duty of the court to find invention in the composition before the patent could be sustained. This I cannot find, for the reasons before stated. The Kimble patent having covered a composition which had been known to the public before that time, and been included in prior patents, it necessarily follows that neither the composition nor the article produced was novel or patentable, and that the patent is invalid. Complainant's bill will be dismissed, at its costs. Decree will be entered accordingly.