UNITED STATES CREDIT SYSTEM CO. *v.* AMERICAN INDEMNITY CO.

*(Circuit Court, N. D. Illinois. April 18, 1892.)*

PATENTS FOR INVENTION—INVENTION—DEBT INSURANCE.
Letters patent No. 465,485, issued December 22, 1891, to Levi Maybaum, for "means for securing against excessive losses by bad debts," being a plan of insurance against losses from bad debts based on estimates of the different percentages of loss in different lines of business, and providing forms for ruling paper, with spaces for entering various details of the insurance transaction, are void for want of invention.

In Equity. Action by the United States Credit Company for infringement of patent, originally brought against one Langsdorf, and, upon intervention, the American Indemnity Company was made defendant. Heard on demurrer to bill.

The amended bill of complaint alleges that the complainant is a New Jersey corporation; that, prior to the date of the patented invention hereinafter referred to, no particular system or means of insuring business men against loss from bad debts was known or used; that prior to the 5th day of January, 1891, one Levi Maybaum, of Newark, N. J., was the original and first inventor, contriver, and discoverer of a new, useful, and practical system or method of insuring business men against excessive losses from bad debts, and that he was the discoverer and inventor of a certain new and useful means for carrying said new and useful system or method into practice; that attached to the bill of complaint is a copy of the patent, in which said Levi Maybaum sets forth his claim for a patent, the substance of which is as follows:

"By a careful observation of statistics and of other sources of information, I have ascertained that the average losses due to bad debts vary in different lines of business, and I have compiled tables showing what the average percentage of losses in all of the principal lines or classes of business are and have been for a series of years. I have also ascertained that in those lines of business in which there is a large percentage of average loss there is also a

larger percentage of average profit, and that, therefore, on the average, persons transacting any given line or class of business, can afford to make losses to the amount of the average percentage of their class, without danger of too great a reduction of the profits of their business. My invention or art and method of guarantying credits is based upon the ascertainment of these facts, and, for the purpose of practicing my invention, I have prepared or compiled tables in which all kinds of business are classified, and the average rate or percentage of loss in each ascertained, from which can be readily determined what amount of loss in any given class of business would be a loss in excess of the average usually sustained from bad debts in that class, and what, therefore, would be an amount of loss which a person in that business cannot afford to make without impairing the average profits normally due in that class; and I have invented a sheet, page, or form for entering the details of such transaction, forms of which are shown in Figs. 1 and 2, respectively. Heretofore it has, of course, been common for persons to obtain guaranties or security for individual doubtful debts due from certain customers, or to require, in the case of any given customer, before dealing with him, that purchases by that customer should be guarantied. Such a course cannot, however, be generally adopted, as it would involve the obtaining of separate guaranties for each individual debt or each individual debtor. It is also not feasible to guaranty persons in business against any loss whatever from bad debts, or to guaranty against all losses from any and all customers generally, as such a mode of practicing the business of guarantying would induce recklessness on the part of the person guarantied in giving a credit."

The statement goes on to give the mode or manner of practicing the art, how to arrive at the proper percentage of loss, and explaining the sheets of ruled paper contained therein, which are marked "Sheet No. 1" and "Sheet. No. 2." It states, in substance, that he provides separate spaces for entering the details of the transaction of insurance; for instance, a space for the name of the assurer, another one for the name of the assured, another for the per cent. or amount beyond which losses are guarantied against, etc. The claim for which he desires to secure letters patent is as follows:

"What I claim, and desire to secure by letters patent, is (1) the means for securing merchants and others from excessive losses by bad debts, which consist of a sheet provided with separate spaces and suitable headings, substantially as described, for the name of the assurer, the name of the assured, the percentage or amount beyond which assurance is given, the class or classes of persons, as to rating, capital, or otherwise, in respect to whom said losses are guarantied against, and the percentage of said capital or the amount which said losses must not exceed. (2) The means for securing merchants and others from excessive losses by bad debts, which consist of a sheet bearing the name of the assurer, and provided with separate spaces and suitable headings, substantially as described, for the name of the assured, the percentage or amount beyond which assurance is given, the class or classes of persons, as to rating, capital, or otherwise, in respect to whom said losses are guarantied against. (3) The means for securing merchants and others from excessive losses by bad debts, which consist of a sheet provided with separate spaces and suitable headings, substantially as described, for the name of the assured, the percentage or amount beyond which assurance is given, the class or classes of persons, as to rating, capital, or otherwise, in respect to whom said losses are guarantied against, in conjunction with a register for details of the transaction adapted to disclose the amount of loss sustained, substantially as described."

The drawings or sheets attached to the patent are as follows:

**FIG. 1.**

| Guarantees | | Percentage on Sales | Percentage on Rating | Ratings Covered | | Consideration | Conditions |
|---|---|---|---|---|---|---|---|
| Name of Assurer | Name of Assured | beyond which Assurance is given | which individual indeb's must not exd. | Capital Rating | Credit Rating | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

MEANS FOR SECURING AGAINST EXCESSIVE LOSSES BY BAD DEBTS.
No. 465,436.  Patented Dec. 22, 1891.

**FIG. 2.**

| Guarantees | Name of Assurer | Name of Company |
|---|---|---|
| | Name of Assured | |
| | Percentage on Sales beyond which Assurance is given | |
| | Percentage on Rating which indiv. indebt's must not ex'd | |
| Ratings Covered | Capital Rating | |
| | Credit Rating | |
| | Consideration | |
| | Conditions | |

The bill further alleges that the defendant is infringing said patent, and asks for an injunction and damages. The defendant demurred to the complainant's bill.

*Lysander Hill*, for plaintiff.

*John M. Thatcher* and *Davis, Kellogg & Severance*, for defendant.

BLODGETT, District Judge, (*orally.*) I cannot see any ground on which to sustain this patent. It is void for want of invention. The guarantying of men's financial ability to pay is not an invention of the complainant. Nearly all forms of guarantying or insuring have been in existence for many years, notably fidelity, casualty, fire, lightning, and other forms of insurance, all of which are based upon averages obtained from practical experience. It required no inventive genius to form and plan the insurance on this basis. One is not entitled to a patent for a plan or method of business which only requires good judgment and foresight. In this case ordinary business judgment would suggest this system of guarantying. Again, the means for securing merchants and others against excessive losses is stated to consist of a sheet of paper containing ruled lines and certain tabulated information or statistics. It is evident that the means for securing the merchant is by virtue of a contract or agreement whereby the assured guaranties the merchant against loss. The arrangement of a sheet of paper with ruled lines for tabulating information is not new. That statistics and various kinds of information have always been tabulated in a similar manner is a matter of general knowledge. I do not intend to decide that a man may not have a patent for a mode of keeping accounts, or for a form of tabulating amounts or statistics; but am clearly of opinion that this patent cannot be construed to cover a business principle such as a law of averages, which seems to have been the purpose of the specifications in this patent.

After the foregoing opinion was delivered, and before any formal order was entered, the complainant dismissed its bill of complaint.