### UNITED STATES CREDIT SYSTEM CO. v. AMERICAN CREDIT INDEMNITY CO.

#### (Circuit Court of Appeals, Second Circuit.   December 5, 1893.)

1. PATENTS—INVENTION.
    The use of sheets or tables with spaces and headings suitable for recording business transactions as part of a scheme for insuring merchants and traders against excessive losses by bad debts, possesses no patentable novelty.   53 Fed. 818, affirmed.

2. SAME — "MEANS FOR SECURING AGAINST EXCESSIVE LOSSES BY BAD DEBTS."
    Patent No. 465,485, issued December 22, 1891, to L. Maybaum, for "means for securing against excessive losses by bad debts," is void for want of patentable novelty.

Appeal from the Circuit Court of the United States for the Southern District of New York.

In Equity.   Bill by the United States Credit System Company against the American Credit Indemnity Company for infringement of patent.   A demurrer to the bill was sustained.   53 Fed. 818. Complainant appeals.   Affirmed.

This is an appeal from a decree of the circuit court for the southern district of New York dismissing the bill of complaint.   The suit was brought on letters patent to Levy Maybaum, dated December 22, 1891, No. 465,485, for "means for securing against excessive losses by bad debts."   Defendant demurred to the bill, which was in the usual form, the objections presented being not to the form of pleading, but to the sufficiency of the patent itself.

Rowland Cox, for appellant.

Edgar M. Johnson, (Hoadly, Lauterbach & Johnson, on the brief,) for appellee.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

LACOMBE, Circuit Judge. What the patentee conceived and sought to patent is correctly enough entitled a "means for securing against excessive losses by bad debts." He contemplated the insuring of merchants or traders against such losses by means of contracts of insurance; the insurer, whether individual or corporation, guarantying to make good to the insured whatever losses in excess of a definite percentage he might incur from bad debts. In his specification he states that a careful observation of statistics discloses the facts that the average loss due to bad debts varies in different lines of business, and that the average percentage of profits varies in like manner, so that, "on the average, persons transacting any given line or class of business can afford to make losses to the amount of the average percentage of their class without danger of too great a reduction of the profits of their business." Having determined from tables compiled, either by himself or others, what is the average percentage of loss in the kind of business the person asking insurance is engaged in, the person practising the patented scheme then "enters into a guaranty with the party applying to be guarantied, based on the payment by him of a premium determined by the risk of his class, securing him against any loss from bad debts in excess of the average loss of his class." To secure the insurer against undue risk the patentee states that it should be further provided that the persons, losses from whom are to be guarantied against, should be of a given rating as to credit or capital, or both, in some established mercantile agency to be agreed upon between insurer and insured; and for additional security to the insurer the agreement of guaranty is to be so restricted as not to cover losses incurred from dealing with any party in excess of a given percentage of the capital of such party as reported by such mercantile agency.

It is manifest that the alleged "new and useful improvement" is a mode of conducting the business of insurance, to be made effective in securing against losses from bad debts by means of contracts of guaranty entered into by the person "practicing the improvement," and conducting the business of such insurance, with persons desiring to protect themselves by obtaining the security of such contracts. Whether a new method of conducting a business such as insurance is or is not patentable, and whether "forms of contract" by which improved methods in conducting such business are made effective are or are not patentable, are questions which were discussed at length upon the argument, but which need not be decided upon this appeal. They do not arise under this patent.

The patentee begins his specification with the statement that he has invented a "new and useful improvement in means for securing merchants and others from excessive losses by bad debts," and then sets forth what he declares to be "a full, clear, and exact description of the means and mode of making such guaranty, and of practicing said invention." The specification which follows begins

with a statement of the fixed relation between average percentage of loss and of profits.   It proceeds as follows:

"My invention or art or method of guarantying credits is based upon the ascertainment of these facts, and for the purpose of practicing my invention I have prepared or compiled tables, [nowhere given in the patent,] in which all kinds of business are classified, and the average rate of percentage of loss in each ascertained, from which can be readily determined what amount of loss in any given class of business would be a loss in excess of the average usually sustained from bad debts in that class, and what, therefore, would be an amount of loss which a person in that business cannot afford to make without impairing the average profits normally due in that class; and I have invented a sheet, page, or form for entering the details of such transaction, forms of which are shown in Figs. 1 and 2, respectively."

Fig. 1 is as follows:

### Fig. 1.

| Guarantees. | | Percentage on Sales. | Percentage on Ratings. | Ratings Covered. | | Considera'n. | Conditions. |
|---|---|---|---|---|---|---|---|
| Name of Assurer. | Name of Assured. | beyond which assur'ce is given. | which individual indeb's must not ex'd. | Capital Rating. | Credit Rating. | | |
| | | | | | | | |

Fig. 2 is the same, only with the headings arranged perpendicularly instead of horizontally.   If the columns headed respectively "Percentage on Sales beyond which assurance is given," and "Percentage on Rating which individual indebtedness must not exceed," be assumed to set forth some of the results of each transaction, it is only as a record of something otherwise determined.

The specification, after stating that guaranties for individual doubtful debts are common, sets forth the patentee's "plan, method, or process,"—his "system of guarantying payment by all persons of a given class on the payment of a fixed premium."   The substance of such system has been already described.   It consists in the ascertainment of the average percentage of loss, and the making of a contract of insurance, prepared to cover only the excess of loss beyond such average percentage, and restricted both as to the rating of the parties whose losses are insured against, and as to the amount of risk to be taken in the case of each debtor.   The specification then proceeds as follows:

"It will be readily understood from the above description of my art, method, or process that it is practiced by the use of peculiar books and tables, and by the use of forms of contract or guaranty substantially of the kind and containing the provisions above indicated.   The peculiar construction of book used in the practice of my art, method, or process is as follows: I set apart a certain portion of the same to be used in connection with each guaranty that is made.   I prefer to apply a page for such purpose, and I will proceed to describe a single page of a book of which all pages are alike.   Said page or book is more fully described in my divisional application for letters patent, Serial No. 404,582, filed September 5, 1891.   At the

top of the page I provide a form to be filled out with the distinguishing features of the particular guaranty to which the page is devoted. The drawing annexed hereto represents a page from said book, and I there indicate the form which I have found useful for this purpose. The remainder of the page I rule as shown in said drawing, indicating by appropriate words or signs the method of filling up the blanks. Columns are particularly provided for the details, which will disclose whether or not any loss, or what part thereof, is covered by the guaranty, and from which it may be readily ascertained whether any or how much loss against which the person has been guarantied has been sustained. When notice of any loss to a person guarantied is received, the details of the same are entered on the page or portion of said book devoted to this particular guaranty. Illustrations of the peculiar sheet, form, or page which embodies my invention are shown in Figs. 1 and 2, respectively. I provide separate spaces for entering the several details of the transaction hereinbefore described. For instance, there is a space for entering the name of the assurer, another for entering the name of the assured, another for entering the percentage or amount beyond which losses are guarantied against, another for entering the percentage of the capital rating or the amount which ·the indebtedness of the party guarantied against to the party guarantied must not exceed, and another for entering the rating, capital, or otherwise according to some established mercantile agency, which the party guarantied against must have. The space for entering the name of the assurer or other of said details may be previously filled in, as shown in Fig. 2, and there also may be spaces for entering other conditions and the consideration of the transaction."

At the close of the specification appears this statement:

"What is described herein and not claimed I do not abandon, but I make a divisional application for letters patent for the same in the above-mentioned divisional application."

The claims are as follows:

"(1) The means for securing merchants and others from excessive losses by bad debts,. which consist of a sheet provided with separate spaces and suitable headings, substantially as described, ·for the name of the assurer, the name of the assured, the percentage or amount beyond which assurance is given, the class or classes of persons, as to rating, capital, or otherwise, in respect to whom said losses are guarantied against, and the percentage of said capital or the amount which said losses must not exceed.

"(2) The means for securing merchants and others from excessive losses by bad debts, which consist of a sheet bearing the name of the assurer, and provided with separate spaces and suitable headings, substantially as described, for the name of the assured, the percentage or amount beyond which assurance is given, the class or classes of persons, as to rating, capital, or otherwise, in respect to whom said losses are guarantied against.

"(3) The means for securing merchants and others from excessive losses by ·bad debts, which consist of a sheet provided with separate spaces and suitable headings, substantially as described, for the name of the assured, the percentage or amount beyond which assurance is given, the class or classes of persons, as to rating, capital, or otherwise, in respect to whom said losses are guarantied against, in conjunction with a register for details of the transaction adapted to disclose the amount of loss sustained, substantially as described."

It is manifest from these excerpts that what is claimed is not what is stated in the title and declaration of invention, viz. "Means for securing against excessive losses by bad debts." The sheets described in the claims may be printed by the ream, and may even be filled in interminably with details appropriate to each heading, "the several details of the transaction hereinbefore described," as the patentee expresses it, and yet not a single dollar of loss by bad

debts will be secured against. Nor are the "sheets," the "forms of contract," or "guaranty" referred to in the specifications. The three claims of the patent are concerned solely with the providing of sheets with appropriate headings, adapted to be used in preparing historical records of certain business transactions. There is nothing peculiar or novel in preparing a sheet of paper with headings generally appropriate to classes of facts to be recorded, and whatever peculiarity there may be about the headings in this case is a peculiarity resulting from the transactions themselves. No one could prepare a full record of the business of insurance, when conducted in the way in which the patentee proposes to conduct it, without entering upon such record the very same details of the transactions which the patentee says that his pages or sheets are to contain. Given a series of transactions, there is no patentable novelty in recording them, where, as in this case, such record consists simply in setting down some of their details in an order or sequence common to each record. In the specification the manner of conducting the business of insurance suggested by the patentee, and the kind of contract of indemnity to be entered into, are both described. The conducting of such business and the making of such contracts constitute the transactions to be recorded. But neither the "method of business" nor the "form of contract" is claimed in this patent. Whether such methods and forms of contract are not novel, or not patentable, or are patentable, but abandoned to the public because described and not claimed, or are patentable and covered by some other patent, is immaterial. In testing the validity of this patent for the "sheets," the methods and forms of contract described and not claimed in it are to be considered as outstanding. Underwood v. Gerber, 149 U. S. 224, 13 Sup. Ct. 854. The holder of this patent has not, by it, secured any monopoly of the "transactions" to be recorded; and, such transactions having their origin and completion independent of this patent, there is not patentable novelty in the use of sheets for the purpose of recording them.

The decree of the circuit court is affirmed, with costs.