## HOTEL SECURITY CHECKING CO. v. LORRAINE CO.

(Circuit Court, S. D. New York. July 2, 1907.)

**1. PATENTS—NOVELTY—METHOD OF ACCOUNT CHECKING.**

The Hicks patent, No. 500,071, for a method of and means for cash registering and account checking, designed to correctly check the account of each individual waiter and of the cashier employed in a hotel or restaurant, and to prevent peculation and collusion between customers and waiters to defraud the proprietors, is void for lack of patentable novelty and invention; the method shown differing in no patentable sense from those previously in use.

**2. SAME—EVIDENCE OF INVENTION—EXTENT OF USE OF PATENTED ARTICLE.**

Where there is no invention, the extent of the sales and use of the patented article is immaterial to sustain the patent.

In Equity. Suit for infringement of patent. On final hearing.

Albert Francis Hagar (Robert N. Kenyon and Richard Eyre, of counsel), for complainant.

George D. Beattys and George B. B. Lamb, for defendant.

HAZEL, District Judge. The patent in suit, No. 500,071, granted June 20, 1893, to John T. Hicks, is for a "method of and means for cash-registering and account-checking." The specification substantially states that the object and general purpose of the alleged invention is to correctly check the account of each individual waiter and of the cashier employed in a hotel or restaurant, and to prevent peculation and collusion between customers and waiters to defraud the proprietors. According to the patent, the said object is accomplished as follows:

"I provide each waiter with slips of paper bearing some mark which shall distinguish the slips from those used by any other waiter in the same establishment, and I provide the person in charge of each department, which fills an order given by waiters, with a sheet or sheets of paper also so marked that a particular sheet or column shall be appropriated to each of said waiters and to him only. These marks may be the name of the waiter, or a number, or the color of the paper, or any arbitrary symbol, though, in practice, I have given a number to each waiter, and required him to wear a badge showing it, and provided one sheet for each department to be ruled lengthwise into parallel columns, each headed with a corresponding number, and believe this to be the easiest and simplest way of connecting the waiter, the slip used by the same waiter, and the sheet or column appropriated to him by each department."

The claims of the patent, two in number, read:

"1. The herein-described improved means for securing hotel or restaurant proprietors or others from losses by the peculations of waiters, cashiers, or

other employés, which consists of a sheet provided with separate spaces, having suitable headings, substantially as described, said headings being designatory of the several waiters to whom the several spaces on the sheet are individually appropriated, in conjunction with separate slips, each so marked as to indicate the waiter using it whereby the selling price of all the articles sold may be entered in duplicate, once upon the slip of the waiter making the sale, and once upon his allotted space upon the main sheet, substantially as and for the purpose specified.

"2. The herein-described improvement in the art of securing hotel or restaurant proprietors and others from losses by the peculations of waiters, cashiers, or other employés, which consists in providing separate slips for the waiters, each so marked as to indicate the waiter using it, and in entering upon the slip belonging to each waiter the amount of each sale that he makes, and also in providing a main sheet having separate spaces for the different waiters and suitably marked to correspond with the numbers of the waiters and of their slips, and in entering upon said main sheet all the amounts marked upon the waiters' slips so that there may thus be a duplication of the entries, substantially in the manner and for the purpose specified."

Claim 1 points out how the benefits of the patent may be secured to hotel and restaurant proprietors, while claim 2 indicates what must be done to effectuate the purpose of the patentee. Importance is placed by the complainant upon the requirement that the so-called checker must enter in duplicate the articles purchased upon the waiter's slip and upon the main sheet under the number or symbol of the waiter. The method adopted and described in the patent apparently consists of a system of charging the waiter with the articles purchased by a guest upon the main sheet, and, assuming the vigilance and rectitude of the checker in charge of the main sheet, a correct detailed statement or total amount of the purchases by the guest may be kept.

The means for accomplishing the object of the patentee principally consists of utilizing a printed sheet of paper appropriately ruled into vertical columns, having the number, name, or other means of identifying a waiter printed thereon, and using in conjunction therewith a ruled slip or sheet of paper also having printed thereon the number of the waiter or any other arbitrary individual designation. The checker sits at a table in or near the kitchen with the main sheet before him, and as each waiter passes to supply the guest he inspects the articles on the waiter's tray, and in duplicate enters the prices thereof in the proper column upon the main sheet, and writes or stamps the prices upon the printed slip of the waiter. It was claimed at the hearing that users of the patent in suit are practically secured against loss by peculation, but of this I am not convinced. Dishonesty of the waiter or checker is not prevented by the use of the patent in suit, and to stop pilfering by the waiter or collusion with a customer the users, in fact, must rely upon the uprightness and accuracy of the checker. Neither does the record disclose means to prevent the latter from combining with a waiter to cheat and defraud the employer. The system undoubtedly has advantages which are useful, but the interesting question here is whether the means specified produce a patentable result. I am of the opinion that nothing of patentable novelty is disclosed. The entire scheme and its adaptability apparently depends upon a rule of conduct consisting of the correct use by the checker of the main sheet, the vigilance and carefulness of the em-

ployer; and, moreover, without conforming to the precise steps pointed out in the specification to secure the asserted advantages, there is nothing disclosed by the patent but the printed slips with the waiter's number and the vertically ruled main sheet. It is doubtful whether such slips and main sheet, with their spacings or printing thereon for columns, figures, and writing, together with the promulgation of rules for their proper use, disclose invention. United States Credit System Co. v. American Indemnity Co., 59 Fed. 139, 8 C. C. A. 49; Munson v. Mayor, 124 U. S. 601; United States Credit System Co. v. American Indemnity Co. (C. C.) 51 Fed. 751.

The case at bar seems to me similar to Hocke v. New York Central & H. R. R. Co., 122 Fed. 467, 58 C. C. A. 627, where the Circuit Court of Appeals for the Second Circuit, speaking by Judge Wallace, says:

"It [the patent] purports to disclose to the public, and especially to that part of the public engaged in the business of shipping and transportation, an improved method of preventing and rectifying mistakes in the transaction of their business. Such improvements generally suggest themselves as their necessity becomes apparent to the intelligent and enterprising men who usually conduct this kind of business, and it would be surprising, indeed, if the long and extensive experience of forwarders and carriers had not discovered so obvious a method as that which is disclosed."

This principle is thought applicable here, in view of the evidence showing that prior to the patent in suit a patent was issued to George D. Smith, No. 449,973, which indicated means for securing to a proprietor the amounts collected for food served by waiters. In the Smith patent a single sheet having spaces and coupon headings for designating the waiters was used by the waiter. Although there are no parallel columns on the sheet, and no designation or number printed thereon when the sheet is delivered to the waiter, yet the elements of this method would seem to correspond to those of the patent in suit. No main sheet is used, but the coupon attached to the waiter's slip apparently serves a similar purpose. The rules of conduct for successfully carrying out the object of the Smith patent are also unlike those adopted by Hicks, but any dissimilarity is not of conspicuous consequence. The specification of the Smith patent shows that the amount of each purchase is entered upon a sheet attached to a coupon or waiter's check upon which the total amount only is placed. True, in the Hicks method the main sheet remains in charge of the checker, who duplicates the individual charges or the total, yet, assuming the claims patentable as to subject-matter, I am unable to perceive any advance in the art other than would occur to persons engaged in the business requiring the use of such a method. This conclusion also finds persuasive support in the oral evidence found in the record showing the prior use of various methods to accomplish the identical object in suit. Such methods are not thought essentially different in a patentable sense from the patent in suit. Furthermore, it is evident, as hereinbefore suggested, that the printed slips and main sheet of the Hicks patent do not positively secure the prevention of peculation by waiters and checkers. The integrity of the checker in charge of the main sheet and the watchfulness and carefulness of the employer himself or some trusted employé acting in his behalf

are essential elements to its success, and these elements cannot be considered in determining the question of patentable invention.

In view of the foregoing, the asserted extensive use into which the device has gone and the large amounts in royalties that have been paid to complainant cannot be considered as giving the device patentable novelty. Upon this point, the adjudications uniformly hold that, where there is no invention, the extent of the sales and use of the patented article is immaterial. McClain v. Ortmayer, 141 U. S. 419, 12 Sup. Ct. 76, 35 L. Ed. 800; Adams v. Bellaire Stamping Co., 141 U. S. 539, 12 Sup. Ct. 66, 35 L. Ed. 849; Peoria Target Co. v. Cleveland Target Co. (C. C.) 47 Fed. 725; Olin v. Timken, 155 U. S. 155, 15 Sup. Ct. 49, 39 L. Ed. 100.

The bill is dismissed, with costs.