## INTERNATIONAL TERRA COTTA LUMBER CO. v. MAURER et al.

*(Circuit Court, S. D. New York. December 1, 1890.)*

1. PATENTS FOR INVENTIONS—REISSUE OF LETTERS.

   The claim of reissued letters patent No. 10,420, for an improvement in fire-proof composition, was for "a composition to be used for fire proofing, and other purposes, consisting of kaolin * * *, prepared with water, machine-pressed, dried, burned, and adapted when burned to be sawed or wrought with edged tools." The claim of the original patent No. 248,094, granted October 11, 1881, to Charles G. Gilman, was for "a composition to be used for fire-proofing, and other purposes, consisting of kaolin * * * prepared with water, machine-pressed, dried, burned, and, subsequent to firing, sawed or wrought with edged tools." *Held*, that the claim of the reissue was for an invention different and broader than the original, and was invalid.

2. SAME—IDENTITY OF REISSUE AND ORIGINAL.

   A reissue is not void because one division of the reissue is identical with the original patent.

3. BILL FOR INFRINGEMENT—PROFERT AND OYER.

   When a bill for infringement, based on reissued letters patent, tenders profert and oyer of the original as well as of the reissue, and as the instruments are public documents, at all times open to examination, they are presented as parts of the bill, and objections to their validity may be taken by demurrer.

4. SAME—DEMURRER.

   On demurrer to a bill for infringement of reissued letters patent there may be special grounds thereof which relate to each of the reissues separately, and the demurrer may be sustained in part and overruled in part.

On Demurrer.

This action is based upon reissued letters patent, No. 10,419 and No. 10,420, now owned by the complainant. The original patent, No. 248,-094, was granted to Charles C. Gilman, October 11, 1881, for an improvement in fire-proof composition. Subsequently, the patent was surrendered and issued in two divisions. The bill alleges as follows:

"On the eleventh day of October, 1881, letters patent of the United States numbered No. 248,094, signed, sealed and executed in due form of law, and bearing date the day and year last aforesaid, were issued to said Charles Carroll Gilman, whereby there was secured to him and to his heirs and assigns for the term of seventeen years, from the eleventh day of October, 1881, the full and exclusive right of making, using and vending the said improvement throughout the United States and the territories thereof, as by a certified copy of said letters patent, in court to be produced, will more fully appear. * * * That said Charles Carroll Gilman having for good and lawful cause surrendered said letters patent No. 248,094 to the commissioner of patents, and having made due application therefor on the 10th day of October, 1883, and having in all things complied with the acts of congress in such case made and provided, on the eleventh day of December, 1883, new letters patent numbered reissue No. 10,419 and reissue No. 10,420, were issued to Gilman Porous Terra Cotta Company, of New York, N. Y., as assignee of said Charles Carroll Gilman for the same invention for the residue of said term of seventeen years, as by said last mentioned patents or a duly certified copy thereof in court to be produced, will appear."

The demurrer disputes the validity of the reissues for the following reasons: (1) The original patent was not inoperative or invalid, by reason of a defective or insufficient specification, or by reason of the patentee claiming as his own invention or discovery more than he had a right to claim as new; nor did any inadvertence, accident or mistake occur in the procuring of the original patent. Hence both reissues were granted without authority of law and are invalid. (2) Reissue No. 10,420 describes and claims a different invention from that described and claimed in the original patent, and is therefore invalid. (3) The patentee was guilty of laches in applying for the reissues, and hence they are invalid.

*Esek Cowen*, for complainant.
*Robert N. Kenyon*, for defendants.

COXE, J. The complainant contends that the original letters patent are no part of the bill and that the questions affecting the validity of the reissues cannot be considered on demurrer. It will be observed that the averments of the bill having reference to the original are almost identical with those employed in alleging the reissues, upon which the action is founded. In each instance the language is explicit and exact, leaving no doubt that the pleader intended to make all these instruments a part of the bill without incumbering the record with copies, *in extenso*. Profert and oyer are tendered in the most formal manner. The instruments thus alleged are public documents, at all times open to examination. It is thought, therefore, that they are presented to the court as part of the bill and that objections thereto may be taken by demurrer. *Bogart* v. *Hinds*, 25 Fed. Rep. 484.

In the original specification the patentee, after stating that he is the inventor of a new and useful composition of matter, proceeds to describe ingredients of which it is composed and the various steps by which the composition is reduced to the form of logs ready for sawing. He then says:

"On cooling, the logs are removed to the mill and sawed into planks, boards, and dimension stuff, as lumber from wood is manufactured, and subsequently fashioned in the workshop into such forms and articles as demanded by purchasers. This material, being free from grit and tough in texture, can be cut, sawed, bored, grooved, planed, and carved with edged tools, and before or after such treatment can, after slipping and glazing, be submitted to a second firing, with fine results in ornamentation obtained."

On the 10th of October, 1883, the application for a reissue was filed. Reissue No. 10,419 (division 1) with the exception of a few immaterial verbal changes is identical with the original. At the head of the printed copy of the specification of No. 10,420 (division 2) furnished by the patent-office, are these words: "Application for reissue filed October 16, 1883." It is urged that this date must be considered as the date of the application. This position is untenable: *First*, because an unverified declaration of this character is not proof (*Electrical Accumulator Co.* v. *Julien Electric Co.*, 38 Fed. Rep. 117, 140;) and, *second*, because the allegation of the bill that the application was made on the 10th of October, 1883, is admitted by the demurrer. Regarding division 2 it is argued that the attempt is made to claim a much broader invention by the omission of one of the elements of the original. The claims in question are here placed side by side, the italics in each show the matter not found in the other.

| *Original.* | *Division 2.* |
|---|---|
| "A composition of matter to be used for fire-proofing and other purposes, consisting of kaolin clay, free from sand or sandy clay, and resinous sawdust, in the proportions specified, prepared with water, machine-pressed, dried, burned, and, *subsequent to firing*, sawed or wrought with edged tools, in manner described in the foregoing specification." | "A composition of matter to be used for fire-proofing and other purposes, consisting of kaolin clay, free from sand or sandy clay, and resinous sawdust, in the proportions specified, prepared with water, machine-pressed, dried, burned, and *adapted, when burned, to be* sawed or wrought with edged tools in *a* manner described in the foregoing specification". |

The original claim covers a composition of matter having the following ingredients and features combined in the proportion and manner described. (1) Kaolin clay, free from sand. (2) Resinous sawdust. (3) Prepared with water. (4) Machine pressed. (5) Dried. (6) Burned. (7) Sawed or wrought after firing. In division 2 the last element (7) is omitted from the claim and the description is correspondingly altered. The composition claimed is completed without this additional step. True, the suggestion is made that the composition may be sawed or wrought with edged tools, but whether this is done or not is entirely optional. The language "and adapted, when burned, to be sawed or wrought with edged tools" has no legal significance and might as well have been omitted from the claim. A log untouched by saw or edged

tool would infringe the reissue, but not the original. To this extent, therefore, the claim is expanded; it seizes upon structures which would escape from the grasp of the original. It is said that the element of sawing and cutting was no part of the original invention. This may be so, but there can be little doubt that it was fully described in the specification and made a part of the claim of the original, and that the object of the reissue was to get rid of it. By reason of the omission the reissue, in question, is for a different and broader invention.

The demurrer not only attacks the bill in its entirety, but there are special grounds of demurrer which relate to each of the reissued letters patent separately. This practice is proper. Eq. Rule 32; *North* v. *Earl of Strafford*, 3 P. Wms. 148; 1 Daniell, Ch. Pl. & Pr. (Perk. Ed.) p. 650. The demurrer may be sustained in part, and overruled in part. *Powder Co.* v. *Powder Works*, 98 U. S. 126, 140; *Novelty Co.* v. *Rouss*, 39 Fed. Rep. 273. The special demurrer marked "Fifth" relates to so much of the bill as refers to reissue No. 10,420, and clearly presents the question above discussed, viz.: that the reissue is not for the invention originally patented. This demurrer should be sustained. *Manufacturing Co.* v. *Ladd*, 102 U. S. 408; *Coon* v. *Wilson*, 113 U. S. 268, 5 Sup. Ct. Rep. 537; *Plow Co.* v. *Kingman*, 129 U. S. 294, 9 Sup. Ct. Rep. 259; *Yale Lock Manuf'g Co.* v. *Berkshire Nat. Bank*, 135 U. S. 342, 379, 10 Sup. Ct. Rep. 884.

Very little is said in defendants' brief regarding No. 10,419 (division 1) but it is insisted that it is void because, being identical with the original, there was no defect in the latter justifying a reissue. It is argued that if the reissue is valid now the original must have been valid and operative in October, 1883, and, therefore, the commissioner was without jurisdiction to grant the reissue. No authority is cited in support of this contention and, on principle, no just reason can be advanced in its behalf. Although I have been unable to find a decision based upon precisely this state of facts the case which approximates it most closely is *Giant Powder Co.* v. *Nitro Powder Co.*, 19 Fed. Rep. 509. The court there says:

"Patents may be reissued in divisions. It is not necessary that all claims in the reissue should be included in one patent. They are often issued in divisions, and I suppose that a patent might be reissued in divisions in the identical language as to some of the claims, the changes being included in another or separate division or patent; that is to say, all claims, or inventions which are fully covered and operative may be reissued by themselves in one division in the identical language of the original surrendered patent, and all other claims, on amendments to the specifications, and covering the invention shown by the amended specifications, in another division or patent."

A patentee who reissues his patent for the purpose of correcting a clerical error or improving the phraseology of the description may do an unnecessary act but why should it work a forfeiture of an invention justly his own? The public are in no way affected; they lose nothing; the patentee gains nothing. To hold the reissue invalid, in such circumstances, would be to follow an ingenious syllogism to an arbitrary and inequitable conclusion. It frequently happens that a patent is reissued

with the original specification and claims intact and a number of new claims added. The courts have frequently held the new claims to be invalid, but have permitted the original claims to stand. *Gage* v. *Herring*, 107 U. S. 640, 2 Sup. Ct. Rep. 819; *Mahn* v. *Harwood*, 112 U. S. 354, 5 Sup. Ct. Rep. 174; Walk. Patents, § 248. There can be no real distinction between these cases and the case at bar. The special demurrer marked "Fifth" is sustained, in other respects the demurrer is overruled.

---

### ON REHEARING.

#### (February 7, 1891.)

Coxe, J. A rehearing is asked upon the ground that the court erred in holding that the reissue, division 2, is for a different invention from that described in the original patent. Upon this proposition an argument is presented which states the complainant's position more fully than at the hearing of the demurrer. The reason assigned for the omission to make this argument at that time is that the complainant's counsel did not then fully appreciate the importance of division 2, and was under the impression that the decision would turn upon other questions to which greater attention was given. It is doubtful whether, in any view, a rehearing should be granted. No new proposition of law or fact is advanced. Though elaborated, strengthened, and enriched with new illustrations, it is still the old argument which is reasserted. That the contention of the complainant was not presented as fully as its counsel could desire is to be regretted, for impressions are sometimes formed at the hearing of a cause which might have been prevented or modified at the time, but which it is difficult to remove by subsequent argument. In the present instance, however, the fact that the complainant's brief was not so full upon the point in question as upon the other branches of the controversy induced what was intended to be an unusually thorough examination. As a result, the court was unable to find a decision of the supreme court or of a circuit court, since 1882, sustaining a reissue having infirmities like those of division 2. It should be remembered that the patent is not for a machine, but for a new composition of matter, produced by a formula consisting of seven progressive steps which are described with minuteness and accuracy. The question then is, can the patentee omit one step and insist that the product of six steps is the same invention as the product of seven steps? If he may omit step No. 7, and have the same composition, why may he not omit step No. 6, or steps Nos. 6 and 7, and still insist that the invention has not been changed? In describing step No. 7 he is unusually precise. He introduces it with the same formality which is accorded to the other steps. He says, in substance : When the mixture is reduced to a plastic mass it is removed from the tubs and pressed; when sufficiently dry, the logs are removed to the kilns and burned; and when they are sufficiently cool, they are removed to the mill and sawed. The proposition is now advanced that the invention stops with the sixth step. This is asserted

by counsel, not by the inventor. The latter expressly states that the invention is the result of all the described steps. He nowhere intimates that his composition can be produced by less than all. If conjecture were permitted, we might infer that the seventh step could be omitted, but the inventor does not say so. On the contrary he says:

"I am aware that like compositions have been made from a very early day, and that English and American patents have been granted therefor * * *; but I claim that no composition of this character, so far as I can learn, has been made of the same material, with the same proportions, and in the same manner, and without these materials, proportions, and treatment, as described, the full results which I assert cannot be reached."

The complainant's brief upon this motion proceeds upon the theory that all of the description and claim relating to sawing—and fully one-seventh of the specification is devoted to this subject—might as well have been omitted. That the composition is not changed or modified in the least by being sawed into planks, etc., and that no feature is added to the invention by this process. It would seem that this proposition is based largely upon speculation. How can it be asserted, as a fact, of a new composition of matter? How can it be said that the action of the saw upon the logs "on cooling," admitting light and air to the surfaces thus exposed, performs no function and produces no result, other than the ordinary one, and, especially, how can it be said in the teeth of the patentee's assertion that no part of the treatment described by him can be omitted? Even in the pithy and ingenious illustration of the complainant's counsel,—where the invention relates to a liquid composition, and the claim concludes with a statement that the fluid is "subsequently to boiling and cooling, bottled for use, as described,"—a case can readily be imagined where the exclusion of light and air, by immediate bottling, might add a very important feature to the fluid or prevent it from losing strength and vitality. Surely, if the patentee should still further affirm that "unless the said mixture, immediately after it becomes cool, is placed in stone bottles and tightly corked, in the manner described, it will be impossible to produce the said composition," the court would hardly venture to hold that the patentee was ignorant of his own invention, and that it was produced in a different manner from the one described by him. Those who are familiar with patent litigation will recall numerous instances where the highest quality of invention and the most phenomenal results are attributed by learned counsel and enthusiastic scientists to processes and proceedings, apparently, far more trivial. The conclusion cannot be resisted that the reissue in question is within the rule so often laid down by the supreme court. It was thought at the argument of the demurrer, and it is still thought, that it is for the interest of both parties that this important question, which lies at the threshold of the litigation, should be determined before they are subjected to the expense and delay incident to the taking of final proofs in an action in equity. The motion for a rehearing is denied.