CHINNOCK v. PATERSON, P. & S. TEL. CO.

(Circuit Court, D. New Jersey. February 14, 1901.)

1. PATENTS—SUITS FOR INFRINGEMENT—EQUITY JURISDICTION.

A court of equity acquires jurisdiction of a suit for infringement of a patent, where the relief sought is a temporary and permanent injunction and an accounting, and the bill contains the requisite and usual averments, notwithstanding the fact that the patent has only about four months to run when the bill is filed; and it retains such jurisdiction to grant the incidental relief prayed for, although no injunction is issued during the life of the patent.

2. SAME—PLEADING—DEMURRER.

Where a bill for infringement sets out the nature of the invention in general terms only, and makes profert of the patent, such patent will be considered as before the court for the purposes of a demurrer.[1]

3. SAME—INVENTION—PROCESS OF SUSPENDING CABLES.

The Chinnock patent, No. 274,562, for a process of suspending a cable or conductor so as not to subject the same to severe longitudinal strain, which consists of stretching an independent wire taut between the supports, suspending the cable under it, and progressively taking up the slack and binding it to the wire by winding them with a suitable cord, but which does not include the mechanical device by which the process is accomplished, is void on its face for lack of patentable invention.

In Equity. Suit for infringement of patent. On demurrer to bill.

Edw. I. Keasbey, for the motion.

Donald Campbell, opposed.

GRAY, Circuit Judge. This is a suit in equity brought by the complainant against the defendant for an alleged infringement of a patent right. The complainant alleges that prior to the 9th day of October, 1882, he was the original and first inventor of a certain new and useful improvement in suspending cables or conductors, not known or used by others in this country; that, upon application duly made in accordance with the laws of the United States, letters patent No. 274,562 were on the 27th day of March, 1883, duly issued to the said complainant. After a statement of the alleged infringement and notice to the defendant thereof, the complainant prays for a writ of

[1] Pleading in infringement suits, see note to Caldwell v. Powell, 19 C. C. A. 595.

injunction to restrain the said defendant from any further construction or use of the said patented improvement in violation of his rights as aforesaid, and also for an interlocutory decree for an account of the profits of the said defendant, and an assessment of the damages sustained by the complainant by reason of said infringement, and a prayer also for a preliminary injunction. No motion for a preliminary injunction has been made. The defendant has filed a demurrer to the bill of complaint, in which the causes of demurrer are set out as follows:

"(1) That the complainant has not in and by said bill made or stated such a case as entitled him in a court of equity to any discovery from this defendant, or to any relief from this defendant as to the matters contained in the said bill, or any such matters. (2) That the bill of complaint of which the letters patent therein referred to are made a part by profert thereof does not state sufficient ground for injunction, discovery, or relief, because it is apparent upon the face of the said patent that the alleged invention therein referred to is not a patentable invention, and that the alleged process therein described is not an art, within the meaning of the patent laws of the United States, and is without novelty and discloses no invention."

The first question raised under this demurrer was one of jurisdiction. The bill was filed November 22, 1899, and the subpœna was returnable January 1, 1900. The patent expired March 27, 1900. The contention is that it was impossible, under the practice of the court, to have obtained an injunction on final hearing before the patent expired. To show this, reference is made to the rules as to appearance and answer and the taking of testimony. It is quite true, as contended by complainant, that the principal relief prayed for was an injunction, and the grounds for that prayer were the ordinary and equitable ones, of the irreparable nature of the injury threatened, and the inadequacy of any remedy at law. It is true, also, that the relief thus prayed for was the sole ground of equitable jurisdiction; the accounting for profits and the assessment of damages being incidental to the principal relief. When the bill was filed the patent had four months and five days to run. Upon the allegations of the bill, equitable jurisdiction attached, on the ground of the relief prayed for. A preliminary injunction could have been asked for, and might, under justifying circumstances shown, have been granted; but, whether granted or denied, there was undoubted jurisdiction to entertain the suit. Moreover, it was possible, within the time in which the patent had to run, to have obtained, a final decree. Non constat but that a decree pro confesso might have been taken. But the mere fact that in the ordinary course of equitable pleading a final hearing and decree would not be likely to be had prior to the expiry of the patent does not necessarily deprive the court of jurisdiction, or prevent the court from proceeding to grant the incidental relief which belongs to cases of this sort. If facts brought to the attention of the court induced the belief that the particular suit had been instituted as a "mere device to transfer a plain jurisdiction to award damages from the forum to which it properly belonged to a court of equity," the court would be justified, in its discretion, in declining jurisdiction. Such, however, is not the case here, and jurisdiction has been sustained in the circuit courts in cases where a much shorter period was

to elapse between the beginning of the suit and the expiry of the patent. We think, therefore, that jurisdiction has properly attached, and we cannot accede to the contention of defendant in that regard.

The second cause of demurrer, as above recited, is that the letters patent sued on did not disclose a patentable invention. The bill states that letters patent No. 274,562, executed in due form of law, and bearing date the 27th day of March, 1883, "were issued to your orator, whereby there was secured to him and to his heirs and assigns, for the term of seventeen years from the 27th day of March, 1883, the full and exclusive right of making, using, or vending the said improvement throughout the United States and the territories thereof, as by a certified copy of said letters patent in court to be produced will more fully appear." The bill contains no other description of the patent in suit, or of the particular process of the alleged invention for which the letters patent were granted. It is the duty of complainant in his bill to so describe the invention patented that the court may understand its nature and character. In the absence of such description, however, profert may be made of the letters patent, and such profert will take the place of specific allegations descriptive of the invention. Such a reference to the letters patent as is made in this bill is the usual substitute for specifically setting out the invention claimed, and for the purposes of demurrer the more technical practice of profert and the craving of oyer is unnecessary. The letters patent, then, in the present case are before the court, and the objection taken to the patentability of the invention claimed therein can properly be considered.

In the specifications of the patent the patentee sets out the nature of his invention as follows:

"The object of my improvement is to provide for suspending cables or conductors with little slack, and without exerting any severe longitudinal strain upon them. The improvement consists: First, in running a strong wire from one support to another, and drawing it taut; secondly, in hanging the cable or conductor in loose festoons therefrom; thirdly, in placing over the wire and cable or conductor a clamp for holding them together; and, fourthly, in moving this clamp, and applying tarred marline or other suitable material in rear of it, in the form of a spiral or coil, around the wire and cable or conductor."

The single claim of the patent is as follows:

"The process of suspending a cable or conductor, consisting: First, in running a wire of steel or other suitable material from one support to another, and drawing it taut; secondly, in hanging the cable or conductor in loose festoons therefrom; thirdly, in placing over the wire and cable or conductor a clamp for holding them together; and, fourthly, in moving this clamp along, and applying tarred marline or other suitable material in rear of it, in the form of a spiral or coil, around the wire and cable or conductor, substantially as specified."

There is obvious objection to directly stretching between two poles or other fixed supports any cable, cord, or electrical conductor which will not admit of strong tension or strain. But it cannot, in the opinion of the court, be considered as a matter that would tax the invention of an intelligent mechanical engineer, or of any intelligent person, though not specially concerned in mechanical

operations,—a sailor, for instance,—to string the cable or cord to be suspended in festoons from a cord or wire that had been stretched taut for the purpose between the given supports, and then to take up the slack, either by hand or by some mechanical device in the nature of a clamp, sliding the hand or clamp along the loose cable and the taut one, securing them together at intervals by seizing or by spiral winding of a light string or cord around the two. Yet this is, in short, the so-called process described and claimed in the letters patent. Each step, if steps they can be called, is mechanical, and the question of patentability of this alleged process can be fully determined upon the specifications and claim set out in the letters patent. There is no need of any testimony to determine the question. No expert or other witness could make plainer the character of the process, its object, or its utility. It is true that something in the nature of a mechanical device is called for in the claim, as well as in the specifications; but that is simply a clamp for the purpose of holding together the cable to be suspended and the taut wire, in the shape of a spool or reel, around which is wound the marline twine, which is unwound as the clamp advances, forming a spiral wrapping around both the cords. No special form of spool is described or claimed, and in fact it is expressly disclaimed in the specifications, and yet it would seem that the only novel feature described in the patent is the function of the mechanical device embodied in the clamp and spool. As such, it cannot be the subject of a patent. It is contended, however, that any device for holding together the taut wire and the suspended cable which will, as it pushes along, wind around them both in spiral form, by a connected spool or bobbin, a twine or string, will answer the purpose of the process; and it is also contended that the same process can be carried on by hand. It is claimed, therefore, to be a true process, consisting entirely of mechanical steps. As such, it belongs to a class of cases whose patentability is not unquestioned. It will not, however, be necessary to consider here the somewhat difficult and unsettled question as to the inclusion, under the patent law, of processes which consist entirely of mechanical transactions, which may be performed by hand or by any of several different mechanisms. It is enough to know that such cases are exceptional, and claims under them cannot be allowed unless they are clearly brought within the principles of the law, and disclose discovery or invention, which is not involved in the mechanism by which the result is accomplished. Apart from the clamping mechanism, the invention claimed here is nothing more than, as we have said, suspending one cable from another, by taking up the slack of the lower one gradually and winding a cord around the two as you do so. We are clearly of opinion that there is nothing new in this, and that it involves no invention. It could be done by other mechanism than the one suggested in the specifications, and it could be done by hand, and has doubtless been frequently so done in the practice of the riggers' and other arts, for it is a method too obvious to be overlooked by an intelligent person who has occasion to practice it. The claim, if allowed, would apply not only to electro cables suspended between poles, but to any cord or cable suspended between

supports. Indeed, the patentee substantially says this. In the specifications we find the following:

"While I do not wish to confine this invention to any particular cable, it is especially applicable to a cable which I have heretofore patented, comprising a number of conductive wires, coated with an insulating material," etc.

Where a patent on its face, as a matter of common knowledge, shows lack of invention, it is the duty of the court, upon a demurrer, notwithstanding the prima facies of the grant of the patent, to so declare, and not put the parties to the expense and delay of a possibly costly and protracted litigation. The process in this case not belonging, in our opinion, for the reasons stated, to a class to which the protection of the patent law extends, the patent issued therefor is void, and the demurrer must be sustained.