## FOWLER v. CITY OF NEW YORK et al.

### (Circuit Court of Appeals, Second Circuit. February 25, 1903.)

### No. 54.

**1. PATENTS—SUIT FOR INFRINGEMENT—DEMURRER.**

Where a bill for infringement makes profert of the patent, it will be regarded as a part of the bill, and will be examined on demurrer.

**2. SAME—NOVELTY—BITRANSIT RAILWAY SYSTEM.**

The Carpenter patent, No. 570,451, for a bitransit railway system, is void for lack of patentable novelty.

Appeal from the Circuit Court of the United States for the Southern District of New York.

Appeal from a decree (110 Fed. 749) sustaining the demurrer filed by the defendants, and dismissing the bill on the ground that the patent upon which the bill is based is void for lack of patentability.

Eugene H. Lewis, John W. Suggett, and William W. Dodge, for appellant.

George L. Rives, John R. Bennett, and T. D. Merwin, for appellees.

Before WALLACE and COXE, Circuit Judges.

COXE, Circuit Judge. This is an equity action for the threatened infringement of letters patent, No. 570,451, granted November 3, 1896, to Benjamin F. Carpenter for a "bitransit railway system." The specification contains five double-column pages of description and ten claims. It explains with painstaking elaboration and minuteness the difficulties encountered in providing rapid transit in large cities and the remedies proposed by the patentee for overcoming these difficulties.

The defendants demurred upon the ground that the patent upon its face discloses an entire lack of patentable novelty and that the claims are not for combinations but for aggregations merely. The demurrer was sustained and the bill dismissed. The complainant appeals.

The first proposition argued is that the patent cannot be considered for the reason that it is not set out in extenso in the bill or attached thereto.

The bill makes profert of the patent in the following language:

"Which said letters patent, or an exemplified copy thereof, your orator will produce as your honors shall direct."

This is the usual form of pleading in patent causes; it is simple and convenient and avoids the necessity of copying into the bill long public documents accessible to all. In an infringement suit the foundation of the complainant's case is the patent; without it the action cannot stand for a moment and when its validity is challenged it is the duty of the complainant to present it to the court for inspection. If the bill be attacked because the patent is not set out at length the

¶ 1. Pleading in infringement suits, see note to Caldwell v. Powell, 19 C. C. A. 595.

See Patents, vol. 38, Cent. Dig. § 515.

complainant is entitled to produce it in support of the bill and he will not be permitted to suppress it when its validity is challenged.

There can no longer be a doubt that where, in an infringement suit, profert of the patent is made in language similar to that quoted, supra, the patent is regarded as a part of the bill and will be examined on demurrer. Heaton Peninsular B. F. Co. v. Schloctmeyer, 18 C. C. A. 674, 69 Fed. 592; Chinnock v. Paterson P. & S. Co. (C. C.) 110 Fed. 199; International Lumber Co. v. Maurer (C. C.) 44 Fed. 618.

Section 4886 of the Revised Statutes [U. S. Comp. St. 1901, p. 3382] provides that "any person who has invented or discovered any new and useful art, machine, manufacture or composition of matter or any new and useful improvement thereof * * * may obtain a patent therefor."

After describing generally what he proposes to accomplish the patentee says:

"From the above description it will be perceived that my invention furnishes a new method of handling the passengers to secure quick delivery at various points between the ends of an express route."

In other words, the patent describes a new plan for handling the large number of passengers who patronize the public vehicles provided for rapid transit in large cities. It is argued that this is patentable as a "machine" under the language of the statute just quoted.

If a scheme for handling the traveling public in congested districts can, for patent purposes, be regarded as a machine, it is by no means easy to perceive why a new plan for reorganizing the police force, or mobilizing the army or manipulating the guests at crowded public functions, may not also be aptly described as a machine and patented as such.

Conceding, arguendo, that a plan such as is disclosed in the Carpenter patent may, if new and useful, be patented as a machine, it is manifest that no mere abstraction, no idea, however brilliant, can be the subject of a patent irrespective of the means designed to give it effect. In the case at bar patentability must be found, if at all, in the mechanical means and appliances used to carry out the proposed plan. These are all admittedly old. The tracks, turnouts, cars, platforms, motors, loops, partitions, gates and staircases described by the patentee had all been used for years prior to the date of the application to facilitate the transportation of freight and passengers on railways. The feature of the patented system principally relied on to support invention seems to be the arrangement of the tracks, two for express trains and two for local trains, in connection with "island" platforms between the local and express tracks, upon which tracks the trains run in the same direction. By this arrangement a passenger can board a local train, ride upon it until he reaches a station where express trains stop, disembark from the local, cross the platform, board the express and ride upon it until he reaches the express station near his destination, where he may, if he likes, again cross the platform and take a local train which will deposit him still nearer the point he desires to reach. The island platforms are provided with

partitions and gates to prevent crowding. Of this plan the patentee says:

"A conjunctive or co-operative service is thus maintained, and such arrangement and operation I term the 'bitransit' system."

While conceding that island platforms were old he points out the distinction that they were used on roads having two tracks only, and is of the opinion that their use in conjunction with a four-track road is "an entirely novel feature."

The patentee contributes the further information that where the tracks on opposite sides of the platform are not on the same level "adequate staircases" may be provided for the use of the passengers. Again he says that where the express tracks are located outside of the local tracks the approach to the local tracks may be through openings in the center of the street.

Another "feature" of the system, which is, apparently, regarded as novel, for it is incorporated in the claims, is the introduction of loops or switches by means of which trains may be shunted over from one track to another. It is thus described:

"The object of the loop is simply to transfer the trains from the up track to the down track at a given point, and such tracks may be connected with the same effect by suitable switches."

We have thus referred to those features which seem to be relied upon by the patentee and by counsel as constituting the essential elements of the "bitransit system." It is unnecessary to comment upon the remaining suggestions of the specification, as they deal with the most obvious and commonplace propositions.

After giving careful consideration to the arguments advanced on behalf of the complainant we find it impossible to discover any ground for sustaining the patent. The rapid transit problem has been for years a most serious one, especially in the city of New York where the principal obstacles have been lack of space and lack of money to complete such a tremendous undertaking as a suitable subway. Given a four-track road devoted wholly to the transportation of passengers and any competent railroad engineer would know at once how to manage it. He would know where to locate the stations, loops and switches, and he would assuredly arrange for the ingress and egress of passengers so that they would not be compelled to cross the tracks at grade. To plan all these details would undoubtedly require ability of a high order, but not inventive genius. The organizer of such a system would have all the materials ready at his hand with nothing remaining but to adapt them to the new environment.

The court will take judicial knowledge of the fact that for a quarter of a century, at least, it has been customary for travelers living at small towns to take local trains to large cities, remain at the station and, upon the arrival of the express, cross the platform and board it. Even if it be true that, prior to 1895, the trains on either side of island platforms ran in opposite directions, it surely did not involve an exercise of the inventive faculties to run these trains in the same direction. As before pointed out the reason why this was not done before is that there was no necessity for it. The moment

that a four-track passenger railroad was projected the wisdom of such an arrangement was obvious.

The case of Richards v. Chase Elevator Co., 158 U. S. 299, 15 Sup. Ct. 831, 39 L. Ed. 991, is directly in point. The alleged invention consisted in apparatus for transferring grain from one car to another. The court held the patent void on demurrer and, in order to emphasize the absurdity of the complainant's contention, used language which seems almost prophetic of the "bitransit system." The court says:

"Suppose, for instance, it were old to run a railroad track into a station or depot for the reception and discharge of passengers, it certainly would not be patentable to locate such station between two railroad tracks for the reception of passengers on both sides, and to add to the accommodations a ticket office, a newspaper stand, restaurant, and cigar stand, or the thousand and one things that are found in buildings of that character."

Compare this language with the following quotation from the Carpenter patent:

"Safe and convenient access to the transfer platforms is then effected by extending staircases upward or downward to the street, (as the case may be,) and the platforms thus furnish not only the shortest and easiest means of transfer between the cars of the slow and fast trains, but may, when required, afford means of access to and from the street and accommodations for station purposes with ticket office and waitingroom."

We have considered each of the claims separately and find that the same difficulty is applicable to all, namely an entire lack of patentable novelty.

We are of the opinion that the decree of the Circuit Court is right and should be affirmed, with costs.