AMERICAN MUTOSCOPE & BIOGRAPH CO. v. EDISON MFG. CO.

(Circuit Court, D. New Jersey. May 6, 1905.)

1. COPYRIGHT—SUIT FOR INFRINGEMENT—DEMURRER.

In a suit for infringement of a copyright, where the bill makes profert of the copyrighted publication, it may be considered a part of the bill and examined on demurrer.

2. SAME—SUBJECTS OF PROTECTION—PHOTOGRAPHS.

A photograph which is not only a light-written picture of some object, but also an expression of an idea, or thought, or conception of the one who takes it, is a "writing" within the constitutional sense, and a proper subject of copyright.

[Ed. Note.—For cases in point, see vol. 11, Cent. Dig. Copyrights, § 7.

Matter subject to copyright, see note to Cleland v. Thayer, 58 C. C. A. 273.]

3. SAME.

A series of separate pictures printed on a positive film from a number of negatives taken by a camera, and designed for use in a moving picture machine, and which, taken together, tell a connected story, constitute a photograph, within the meaning of Rev. St. § 4952 [U. S. Comp. St. 1901, p. 3406] and may be the subject of a copyright, although in taking the negatives the camera was placed in different locations.

**4. SAME—INFRINGEMENT—PRELIMINARY INJUNCTION.**

A preliminary injunction against infringement of a copyrighted photograph will not be granted where the proofs leave it in doubt whether defendant has in fact used or sold any copies of complainant's photograph, or has merely borrowed complainant's idea, and made other similar, but not identical, photographs of its own; so that an injunction following the allegations of the bill would have no operative effect.

## In Equity.

The complainant applies for a preliminary injunction to restrain the defendant from an alleged infringement of a copyright of a photograph. The application is made upon the bill of complaint and ex parte affidavits taken by the complainant and the defendant. The defendant has also filed a demurrer to the bill. Obviously, the demurrer must be first disposed of, for, if it be good, there is no need of considering the application for a preliminary injunction. In its bill the complainant sets forth that Wallace McCutcheon and Frank J. Marion are the authors, and that by contract with them the complainant is the proprietor, of a photograph duly copyrighted June 24, 1904, made "upon a certain negative film, which said film was subsequently developed, and the photograph taken thereon printed on certain positive films." The manner of taking and using the so-called photograph is thus described in paragraphs 8 and 9 of the bill of complaint:

"(8) That the said photograph was taken by means of a camera owned by your orator, whereby successive views of the same object are taken from the same point of view, so that when the said views are successively thrown upon a screen by means of a projecting apparatus similar to a magic lantern, or otherwise caused to appear in rapid succession within the range of vision of the observer, the impression of actual motion is thereby given; and that the successive views were taken on one negative consisting of a strip of film of about 370 feet long, and that from said negative film positive films have been made by your orator in the course of its regular business, and sold or rented for the purpose of having them reproduced as above described to give the effect to the observer of actual motion, and that each view is not sold or rented by itself, but that the views are sold in numbers together, being printed on one strip of film for the said purpose, and constituting one photograph.

"(9) That the scene prominently depicted in said photograph occurred largely at Grant's Tomb on Riverside Drive in New York City, and represents a French gentleman, who, having inserted an advertisement stating his desire to meet a handsome girl at Grant's Tomb at a certain time, with the ultimate object of matrimony, appears at Grant's Tomb, and is beset first by one woman, soon by another, then by several in succession, who are so importunate in their attentions that he is forced to flee, and does run away from them, with the women in close pursuit. In successive scenes the chase is depicted across the country in various situations, until at last the Frenchman is overtaken by one of the pursuers who discovers him in hiding, and, at the point of a pistol, compels him to yield. That in order to produce the effect above described it was necessary for your orator to employ skilled artists to prepare the apparatus for taking the photographs, and for the manipulation of such apparatus skilled pantomimists were drilled for the performance of the action portrayed, who were rehearsed in their parts. That the manipulation of the camera and film, the cutting of the film, the reconstruction of the same in such manner as to produce most perfectly the illusion sought to be made, required high skill and involved much expense. That the positive film printed from the negative so produced, when thrown upon a screen by means of an appliance similar to a magic lantern, gives to the observer an amusing and entertaining picture of the scene described above."

The complainant also alleges that the defendant, "well knowing the premises, and knowing of your orator's copyright, and willfully disregarding your orator's rights in the premises, did, subsequent to the 29th day of June, 1904, and prior to the commencement of this suit, without your orator's consent and against your orator's wishes, wrongfully and fraudulently prepare, publish, and print for sale, and did sell at its place of business at said West Orange, in the county of Essex and state of New Jersey, and elsewhere within the United

States, copies of said photograph copyrighted as set forth by your orator, under the title of 'How a French Nobleman Got a Wife Through the New York Herald Personal Columns,' or other title or titles of like meaning, and threatens to continue such sale and publication of the said copyrighted photograph—all of which acts were, and still are, being done by the said Edison Manufacturing Company with intent to deceive and defraud the public and the buyers and users of the said photograph, and to deprive your orator of its just rights and profits under the said copyright; and the said defendant has published and sold, and is still publishing and offering for sale, the said photograph entitled 'How a French Nobleman Got a Wife Through the New York Herald Personal Columns,' or a like title, which is a substantial copy of and identical with your orator's said copyrighted photograph, and said defendant threatens and intends to continue such publication and sale."

The complainant further sets forth that it presents to the court as exhibits in connection with the bill one of the complainant's copyrighted photographs and also one of the defendant's photographs. The complainant prays, inter alia: (1) That the defendant "be compelled by an order of this court to deliver up to your orator all the copies of the said copyrighted photograph and all negative films thereof in the possession of the defendant or its representatives"; (2) for a perpetual injunction restraining the defendant from "making or causing to be made, using or causing to be used, selling or causing to be sold, any copies of your orator's said copyrighted photograph not purchased from your orator"; and (3) for an injunction pendente lite "to the same effect as heretofore prayed for in regard to a perpetual injunction."

There are two grounds of demurrer: First. "That it appears from said bill of complaint that said alleged photograph claimed to have been copyrighted by complainant is a positive photograph, printed, not from a single negative, but from a series of separate and distinct negatives, and is not, therefore, protectable as a photograph under the copyright statutes." Second. "That said bill of complaint is wholly without equity."

Kerr, Page & Cooper, for complainant.
Frank L. Dyer, Delos Holden, and Melville Church, for defendant.

LANNING, District Judge (after stating the facts as above). In Fowler v. City of New York, 121 Fed. 747, 58 C. C. A. 113, it was held that in an infringement suit, where profert of a patent is made in the bill, the patent will be regarded as a part of the bill, and will be examined on demurrer. There is no reason why the same rule should not be observed in the case of an alleged infringement of a copyright. Indeed, a comparison of exhibits in a copyright case on demurrer to a bill was made in Mott Iron Works v. Clow (C. C.) 72 Fed. 168. An examination of the complainant's positive film, of which profert is made by the bill, shows that it contains several hundred pictures, and that the camera in which were produced the negatives from which the positive film was printed occupied no less than seven or eight different positions, the first two or three of which, it is clear from the statements of the bill of complaint, were at or near to Gen. Grant's Tomb in New York City, the others being evidently in some country district. The defendant's photograph is also a positive film, evidently printed from negatives taken by a camera located at seven or eight different places, the first two or three of which were taken near to Gen. Grant's Tomb, or to a structure strongly resembling it; the remaining places being also in some country district. That the complainant's photograph is a reproduction upon a positive film of pictures on negatives taken

by a camera located at different points is confirmed by the language of the ninth paragraph of the bill, which states that "the scene prominently depicted in said photograph occurred largely at Grant's Tomb, on Riverside Drive, in New York City," and in the subsequent statement in the same paragraph that "in successive scenes the chase is depicted across the country in various situations." The title of the complainant's copyrighted photograph consists simply of the word "Personal." There is nothing in the proceedings for securing the copyright, as they are set forth in the bill, indicating that the scene depicted in the photograph "represents a French gentleman," or any other person who had "inserted an advertisement stating his desire to meet a handsome girl at Grant's Tomb." Consequently, there is nothing in the complainant's photograph, or in the title to its copyright, or in the proceedings for securing its copyright, in any wise suggestive of the title of the defendant's photograph, which is "How a French Nobleman Got a Wife Through the New York Herald Personal Columns." Still the allegation of the bill is that the defendant has published and sold, and is now publishing and offering for sale, copies of the complainant's copyrighted photograph, to which copies it has given the title above quoted. That allegation must, on the demurrer, be accepted as true, and, if the other allegations of the bill are sufficient to present a prima facie case of a valid copyright, the demurrer must be overruled.

The provision of the Constitution is that Congress shall have power "to promote the progress of science and useful arts by securing for limited times to authors and inventors the exclusive right to their respective writings and discoveries." The word "writings" is not limited to the actual script of the author, but includes his printed books, and all forms of writing, printing, engraving, etching, etc., by which the ideas in his mind are given visible expression. A photograph may therefore be the subject of copyright, for it may give visible expression to an author's idea or conception. Whether a photograph of a building or any other object, which is a mere mechanical reproduction of the physical features or outlines of the object, involving no originality or novelty on the part of him who takes it, is the subject of copyright, may well be doubted. But if a photograph be not only a light-written picture of some object, but also an expression of an idea, or thought, or conception of the one who takes it, it is a writing within the Constitutional sense, and the proper subject of copyright. In this statement, I think, I am clearly within the reasoning of the Supreme Court in the case of Lithographic Co. v. Sarony, 111 U. S. 53, 4 Sup. Ct. 279, 28 L. Ed. 349. In Falk v. Brett Lithographing Co. (C. C.) 48 Fed. 678, Judge Wheeler held that the complainant in that case, who had brought suit for infringement of a copyright of a photograph of a lady and her child, by placing the persons in position and using the position assumed by the child at the proper time to produce the photograph, had done that which entitled him to the benefits of the copyright law. In Falk v. Donaldson (C. C.) 57 Fed. 32, a photographer's copyright was declared to be valid in a case where

he had posed an actress, and arranged the curtains, screens, and lights so as to secure the expression and effect he desired. In Falk v. City Item Printing Co. (C. C.) 79 Fed. 321, the reasonable inference to be drawn from Judge Pardee's language is that a photograph which expresses on the part of the photographer originality and intellectual effort is the proper subject of copyright. From these authorities it must be concluded that a photograph which is the expression of an author's ideas or conceptions may be copyrighted to the same extent that any literary composition expressive of an author's ideas or conceptions may be copyrighted.

But in the case now considered the complainant's photograph consists of hundreds of separate pictures on a positive film printed from a number of negatives taken by a camera placed in several different locations. Can the positive film in such a case be regarded as a photograph? Section 4952 of the Revised Statutes [U. S. Comp. St. 1901, p. 3406] provides that "the author, inventor, designer or proprietor of any * * * photograph or negative thereof, * * * · and the executors, administrators or assigns of any such person, shall, upon complying with the provisions of this chapter, have the sole liberty of printing, reprinting, publishing, completing, copying, executing, finishing and vending the same." In Edison v. Lubin, 122 Fed. 240, 58 C. C. A. 604, in an opinion by the Circuit Court of Appeals of this circuit, it appears that a series of pictures representing the launching of a vessel were taken by means of a camera on a negative film, and that from such film a positive film was reproduced to be used in representing a moving picture. The camera in that case occupied but one position, though it was placed on a pivot on which it could be moved so as to keep the vessel, as it left its stays and moved into the water, within the field of the camera's lenses. It was held that the positive film reproduced from the negative thus taken was a photograph of one act or event, and therefore the proper subject of a copyright. In that case the defendant, who had secured a part of one of these positive films, but, without knowledge that it had been copyrighted, reproduced it on celluloid sheets, and sold them to exhibitors. Having held that the complainant's picture constituted a photograph, the defendant was of course enjoined from further infringement of the complainant's copyright. I am unable to see why, if a series of pictures of a moving object taken by a pivoted camera may be copyrighted as a photograph, a series of pictures telling a single story like that of the complainant in this case, even though the camera be placed at different points, may not also be copyrighted as a photograph. Though taken at different points, the pictures express the author's ideas and conceptions embodied in the one story. In that story, it is true, there are different scenes. But no one has ever suggested that a story told in written words may not be copyrighted merely because, in unfolding its incidents, the reader is carried from one scene to another. The recent advance in the art of photography now enables an author to tell the story of the launching of a ship in a series of pictures printed upon a single positive film in such manner that by throwing the pictures in rapid

succession upon a screen there is produced the representation of the moving ship. Such a series of pictures, so printed, the Circuit Court of Appeals of this circuit has said is a photograph within the meaning of section 4952 of the Revised Statutes. So here, the complainant's positive film contains a series of pictures that may be thrown in rapid succession upon a screen telling a single connected story of a man fleeing from a crowd of women. On the authority of Edison v. Lubin, as I understand that case, my conclusion is that the complainant's positive film is a photograph. By its bill the complainant alleges that Wallace McCutcheon and Frank J. Marion are the authors of the photograph; that by contract with the authors it has become the proprietor of the photograph; that it has had the photograph copyrighted; and that the defendant has made copies of the photograph, and is selling those copies to exhibitors. These allegations seem to establish a prima facie case for the exercise of the injunctive power of the court. Accordingly, the demurrer must be overruled as to both of the grounds on which it rests.

We are brought, therefore, to the consideration of the question as to whether a preliminary injunction should be allowed. The affidavits show that the defendant also has had its series of pictures duly copyrighted, and that they were taken by placing its camera at two or three points near Gen. Grant's Tomb and at other places in a country district in New Jersey. The defendant's pictures were taken at times different from those of the complainant, and by securing a different set of actors, dressed in different costumes. In the first scene of each photograph Gen. Grant's Tomb is visible, and before it appears a man, who is soon met by several women, who crowd about him, and from whom he attempts to run away. In each of the photographs are successive scenes showing the man and the women running down the roadway leading from the tomb, and across fields and through hedges, and jumping over fences and down banks. The two photographs possess many similar and many dissimilar features. The defendant denies having copied any part of the complainant's photograph. Its photographer says:

"The negative prepared by me did not and does not contain a single copy of any of the pictures of complainant's films. Each impression is a photograph of a pantomime arranged by me, and enacted for me at the expense of the owner of the film which I produced. My photograph is not a copy, but an original. It carries out my own idea or conception of how the characters, especially the French nobleman, should appear as to costume, expression, figure, bearing, posing, gestures, postures, and action."

In Munro v. Smith (C. C.) 42 Fed. 266, the question was whether the defendants should be enjoined from publishing a picture of "Old Sleuth" on the ground that they were infringing the complainant's copyright. Judge Shipman said:

"That the defendants got the idea from the plaintiff of having a picture to represent the common hero of all the stories, an apparently old countryman, dressed in an old-fashioned garb and style, and having a shrewd face, is probably true. But the two pictures are dissimilar. The attitude, the general expression, and the general appearance of the two figures are unlike; and

not only unlike. but very different. The variations are more than colorable. The defendants' picture is not an imitation, but their designer took the plaintiff's idea, and worked it out in a different way. I do not find an infringement, and the bill should be dismissed."

I am not prepared to say, on the evidence now before me, that the defendant has appropriated the substance of any part of the complainant's copyright. The copying of the complainant's photograph is asserted on the one side and denied on the other. There has been no cross-examination of witnesses. One of the best means of eliciting the truth concerning the contested question has therefore not yet been applied. It is not now clear that an order that the defendant deliver to the complainant "all the copies of the said copyrighted photograph and all negative films thereon in the possession of the defendant or its representatives" would secure the delivery to the complainant of anything, or that an injunction restraining the defendant from "making or causing to be made, using or causing to be used, selling or causing to be sold, any copies of your orator's said copyrighted photograph not purchased from your orator" would enjoin it from doing anything described in the bill of complaint. The burden of proof is on the complainant. It must establish by clear proof that the defendant is violating its rights. As the proofs now stand, there is doubt upon the question of its right to any relief whatever. Full proofs on final hearing may remove that doubt, and show it entitled to the relief which it seeks, but until such proof is had the court can do nothing.

The conclusion is that the preliminary injunction must be denied.