## HOGAN v. WESTMORELAND SPECIALTY CO.

### (Circuit Court, E. D. Pennsylvania. May 3, 1906.)

### No. 31.

1. PATENTS—SUIT FOR INFRINGEMENT—DEMURRER.

By profert of a patent in a suit for its infringement it is carried into the bill, and, if it is plainly devoid of invention on its face, a demurrer to the bill on that ground is well taken, and must be sustained.

[Ed. Note.—For cases in point, see vol. 38, Cent. Dig. Patents, § 515.

Demurrer for want of invention in patent infringement suit, see note to Caldwell v. Powell, 19 C. C. A. 595.]

2. SAME—INVENTION—SALT AND PEPPER DREDGE.

The Hogan patent, No. 752,903, for a dredge for salt or pepper, having the cap made of celluloid, is void on its face for lack of patentable invention; there being no invention in the substitution of celluloid, the qualities of which were well known, for other materials previously used for making such caps.

[Ed. Note.—For cases in point, see vol. 38, Cent. Dig. Patents, § 23.]

In Equity. Suit for infringement of letters patent No. 752,903 for a dredge granted to Oliver K. Hogan February 23, 1904. On demurrer to bill.

Howard P. Denison, for demurrer.

Ernest Howard Hunter, for complainant.

ARCHBALD, District Judge. [1] The sole question here is whether it is patentable to provide that the perforated cap or top of a salt cellar, pepper box, or other like article, shall be made out of celluloid, in place of the materials hitherto used. By the profert of the patent, it is carried into the bill, and, if on its face it is plainly devoid of invention, the demurrer is well taken and must be sustained. Richards v. Chase Elevator Co., 158 U. S. 299, 15 Sup. Ct. 831, 39 L. Ed. 991; Fowler v. City of New York, 121 Fed. 747, 58 C. C. A. 113. So far as the case of Warner Bros. v. Warren Featherbone Co. (C. C.) 97 Fed. 604, is not in accord with this, it cannot be followed.

As declared in the specifications, the invention in suit—

"Primarily comprehends a dredge consisting of a body of nonmetallic material, the neck of which is provided with molded threads and a cap, the latter in one piece and wholly of celluloid; said cap haveing a depending screw-threaded flange, the thickness of the material forming the said flange and the character of its connection with the rest of the cap being such as to result in a certain amount of flexibility, enabling a proper engagement of the flange with the threaded portion of the nonmetallic body, irrespective of lack of uniformity in the threads of either part, a characteristic generally present in articles where the threads are produced by a molding operation."

Proceeding to point out the existing disadvantages in articles of this character to be obviated by the invention, it is further said:

"Practice has demonstrated that, where two glass or vitreous articles are molded with threads for mutual engagement, the non-uniform character of the

---

threads resulting from the molding operation renders the connection of such parts by their threads extremely difficult. This may be obviated to some extent by making the threads relatively coarse and the engaging portion of one of the parts sufficiently ample to facilitate its taking over its companion, but such expedient would manifestly preclude a tight fit. Another remedy would be to grind the threads after they have been molded, so as to render them accurate; but such recourse would be both tedious and expensive and not warranted in the production of a cheap class of articles. Hard rubber might be employed in the formation of a dredge-cap and when the dredge-cap was so constituted it would avoid some of the serious features of metal. Moreover, a hard rubber cap might be made to possess the flexibility required on account of irregularity in the threads of the engaging parts; but, were such cap employed in connection with a salt-dredge, even the comparatively small percentage of hydrochloric acid evolved would be sufficient to unite with the sulphur in the rubber composition and ultimately result in the disintegration of the latter and consequent injury of the cap."

After explaining in detail the form and construction of the cap, "it will be appreciated from the foregoing description," says the inventor, "that a dredge embodying my invention is extremely hygienic, of finished and attractive appearance, and highly efficient, as well as comparatively inexpensive. The lightness of weight of the improved article, when considered with respect to dredges wholly of glass or other similar vitreous material, is appreciable. Such reduced weight also constitutes a favorable factor in the shipment of large quantities of these dredges. Due allowance being made on account of its limited thickness, and bearing in mind its several novel advantages, the cap used in my improved dredge is quite durable."

Conceding that all which is so claimed for a celluloid cap is true of it as compared with others, it by no means follows that it involved invention to perceive that this would be the result of the substitution of that material, and with all its verbiage that is what the patent in the end comes down to. There is no difference in form or construction from anything which had preceded it, except as the one is able to be made thinner and lighter, and admits in consequence of a closer correspondence and fit between the screw and flange of the cap and the neck and shoulder of the dredge. But the natural qualities of celluloid have long been well known, and cannot be monopolized in this way for the production of so simple and common an article as the top of a dredge or salt cellar. The substitution of a new and different material may possibly in some rare instances amount to invention. But in order to do so—it is submitted—the substitution must lend itself in some special and not readily discernible manner to the production of a new and not otherwise attainable function or result, nothing of which appears here. It was well understood, for example, that the composition called celluloid, by reason of its comparative hardness, durability, and lightness, as well as its capacity for being nicely shaped and molded, was able to be fashioned into any number of useful forms; and it certainly would be carrying the idea of inventive genius to the extreme to hold that anything of that kind was required to perceive that the perforated top or cap of a dredge or salt cellar could be made with advantage out of it. It amounted, at

best, to no more than the extension and adaptation of the recognized qualities of the material specified to the production of a simple and common domestic article, without any change in function, and with only a very inconsiderable variation in the result.

The patent has four claims,[2] in each of which, except the first, the invention in terms is made to depend upon the use of celluloid. In the first, instead of this, "a material insensible to the emanations from the salt" is specified. This, while apparently seeking to broaden the claim as to the material. necessarily eliminates all dredges except where salt is the commodity, and thus to that extent narrows it. Not only, however, does it by. reason of this go outside of the specifications, but, in designating the material by the suggested quality only, it is made too indefinite and general to be sustained. As to the other claims, nothing further need be said than that dependent as they are on the mere substitution of celluloid for metal, rubber, or glass, previously in use, they involve no invention and are therefore void on their face.

The demurrer is sustained, and the bill is dismissed, with costs.

[2](1) A two-part dredge comprising a body of noncorrosive material having integrally an upper threaded portion, and a cap made wholly of a material insensible to the emanations from the salt, said cap embodying a top containing perforations and a flexible threaded flange, the latter in direct engagement with said threaded body portion.

(2) A two-part dredge comprising a body of noncorrosive material having integrally an upper threaded portion, and a thin shell-like cap made wholly of celluloid, said cap embodying a top containing perforations and a flexible threaded flange, the latter in direct engagement with said body portion.

(3) A two-part dredge comprising a body of noncorrosive material having integrally an upper threaded portion, and a cap made wholly of celluloid, said cap embodying a top containing perforations, and a thin flange having threads impressed through the thickness thereof and in direct engagement with said threaded body portion.

(4) A two-part dredge comprising a body of glass having an upper portion with molded threads, and a thin shell-like cap made wholly of celluloid, said cap embodying a top containing perforations and a flexible flange having threads impressed through the thickness thereof and in direct engagement with said molded threads of the body portion.