PREPAYMENT CAR SALES CO. v. ORANGE COUNTY TRACTION CO.

(Circuit Court of Appeals, Second Circuit. January 12, 1915.)

No. 122.

1. PATENTS ☞276—ACTIONS AT LAW FOR INFRINGEMENT—QUESTIONS FOR COURT.

In an action at law for infringement of a patent, the burden of proof rests on the plaintiff to establish novelty and invention; and where there is no controversy on the facts as to the meaning of the claims or the disclosures of the prior art, such questions are questions of law to be determined by the court.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 240, 432–434; Dec. Dig. ☞276.]

2. PATENTS ☞328—INVENTION—PASSENGER CAR.

The Ross and McDonald patent, No. 800,172, for improvement in passenger cars, in which the entering and departing passengers are separated by a barrier on the platform passing through separate doors, between which the conductor stands on the platform to collect fares from those entering, is void for lack of invention in view of the prior art.

In Error to the District Court of the United States for the Southern District of New York.

This is a writ of error to review a judgment entered in an action at law upon the verdict of a jury finding all of the claims of letters patent No. 800,172, granted to Ross and McDonald, valid and infringed, except the seventh claim, and assessing the damages at $400.

Montague Lessler, of New York City, C. P. Byrnes, of Pittsburgh, Pa., and Israel Shrimski, of Chicago, Ill., for plaintiff in error.

Samuel E. Darby, Frederick P. Fish, and Martin W. Littleton, all of New York City, and Paul Brown, of Chicago, Ill., for defendant in error.

Before COXE, WARD, and ROGERS, Circuit Judges.

COXE, Circuit Judge. The patent in suit was granted September 26, 1905, to Ross and McDonald for improvements in passenger cars, the object of the patentees being to provide those entering the car a clear entrance and those leaving a ready exit. It also had in view a more accurate and complete method of collecting fares by the conductor. In order to accomplish these results a division barrier is arranged on the platform separating those entering from those leaving the car, there being two doorways from the platform to the interior of the car with doors so arranged that, normally, the entrance door cannot be used as an exit and the exit door cannot be used as an entrance. This division of the incoming and outgoing passengers is accomplished by a hand rail extending in a curve from the end of the car at the inner side of the exit entrance to the steps of the car, but it does not project over the lowest step. An additional exit is provided on the front platform. The car is provided with wide steps and sufficient space for the conductor to stand on the platform between the exit and entrance doors and collect the fares from the incoming passengers without interfering with those who are leaving the car. The description sums up the advantages of the alleged improvements as follows:

"By means of the doors K and L the motorman can permit those at the front of the car to alight. The advantages of this operation are that the conductor remains in the proper place to see that persons get off and on the car safely. He collects the fares as the persons enter the car, by which method he gets every passenger's fare and saves time in not having to move about inside the car, which is difficult and slow if the car is crowded. The conductor is also in the proper position to give the starting and stopping signals to the motorman. The motorman having stopped the car is free to open the door L to allow passengers to alight before starting the car again. The car is thus filled or emptied with rapidity, and the stops are therefore of shorter duration and much time is thereby saved."

[1] It is unnecessary to consider all the claims. Claim 2 will serve as a sufficient illustration. It is as follows:

"2. A passenger car provided with two separate doorways between the interior and the platform, and having an intervening space between the doorways, and a barrier dividing the platform and platform steps and providing a separate passage to each doorway as described."

In the case of the Prepayment Car Sales Co. v. Orange County Traction Co., 214 Fed. 576, 131 C. C. A. 156, the car under consideration was a so-called "pay within" car of the "pay as you enter" type, but distinguished from the car now under consideration by the fact that the conductor's normal position was inside the car and not on the platform. The patent was granted to Harold Rountree, October 5, 1909, and points out at length the disadvantages of the pay as you enter plan when the payment is made on the platform and the patentee based his claim for a patent upon the location of the conductor inside the car. He employs a railing, or other suitable form of partition, which extends for a sufficient distance from the entrance door into the body of the car. By this plan the conductor, who is stationed near the door, but inside the car, can see each passenger as he enters and can collect the fare at any point along the inside barrier. Rountree says:

"I also propose so to arrange the railing or partition as to provide a separate passage which may, if desired, be utilized as an exit passage from the car or which may provide a space for the conductor, the railing extending, preferably, or in one form of application of my invention, lengthwise of the car."

In short, Rountree had in mind the same general problem as did Ross and McDonald in the patent now in controversy. In that case we said:

"When a patent cause is tried before a jury and the testimony is closed, the court is not bound, under all circumstances to send it to the jury on the question whether or not the combination of the patent discloses patentable invention. Although invention is generally spoken of as a question of fact, it does not necessarily follow that it must always be sent to the jury; other questions of fact arising in actions at law are frequently disposed of by the court, when upon the whole case the judge is satisfied that a verdict different from his own conclusion, if rendered would have to be set aside. *  *  * All that Rountree seems to have evolved was a place for the conductor to stand—the conductor operating the means of control of the door—where he could see into the car and be seen by the passengers therein."

[2] We held that it did not involve invention to do this within the rule laid down in Fond du Lac Co. v. May, 137 U. S. 395, 11 Sup. Ct. 98, 34 L. Ed. 714; Aron v. Manhattan Railway Co., 132 U. S. 84, 10 Sup. Ct. 24, 33 L. Ed. 272, and Fowler v. New York, 121 Fed. 747, 58 C. C. A. 113. These authorities and many others which might be cited sustain the proposition that in patent cases, as in other cases, the burden is on the plaintiff to establish novelty and invention and if he fails to do this the complaint should be dismissed. If there be a dispute upon the facts whether, for instance, an alleged anticipating device was made before or after the date of the invention of the patent, the verdict of the jury upon this question should be conclusive. Where, however, as in the present case, there is no controversy on the facts as to the meaning of the claims or regarding the disclosures of the prior art, the question becomes one of law which the court should determine. The problem of handling crowds, not only in street cars but in all kinds of vehicles and in stationary structures as well, has received the attention of experts in such matters from the earliest times. The fundamental principles of regulating crowds, whether in cars, excursion steamers, theatres or street pageants, have long been understood. Some of the well known essential safeguards adopted are to separate two streams of people moving in opposite directions by some sort of a barrier, not to permit the same door to be used as an exit and an entrance and so to arrange the entrance that no one can get inside without having paid for the right to enter. As necessity has required, these, and various other well known expedients, have been applied to the street car traffic, varying according to the nature of the service whether urban or suburban. When these problems arise, it is only a matter of adaptation, which any one skilled in the art well knows how to utilize, as was done in the "Island platform" case and the Fond du Lac jail corridor case, cited above. The broad idea of requiring the passenger to pay on entering the car within sight of the conductor, to enter the car by one doorway and retire by another, a barrier being so placed as to effectuate this op-

eration, was at least 13 years old at the date of the patent in suit. What has been done since the "pay as you enter" plan was adopted relates simply to matters of detail. Improvements, undoubtedly, have been made, but it will be found that the same general plan remained unchanged, the new suggestions being designed to meet local difficulties and to solve the problem by different mechanical devices. Some of these patentees preferred swinging doors to sliding doors, some located the conductor at one point, others at a different point, but in all, the broad principle was maintained of separating the entering and retiring passengers by a barrier on the platform. In fact, all the mechanical means for installing the system now in vogue were present in the prior structures, nothing more was needed but to direct the conductor to stand on the patform and collect the fares of the passengers before they entered the car.

Take the Moore patent of April 10, 1888, for a car platform as an illustration. The object of the patentee was to provide "practicable separate entrance and exit ways for elevated and other rapid transit passenger cars of city traffic." He then describes a structure similar to that shown in the patent in suit and claims:

"The improvement in construction of passenger cars which consists of entrance and exit passages separately arranged side by side at the ends of the cars at each side thereof, substantially as shown and described."

In short, it would seem that the Moore car could be used to-day on any surface line without mechanical change and accomplish the same result as the Ross and McDonald car. Assume that in the spring of 1905 an applicant had proposed to station the conductor on the platform between the doors as shown in the Moore drawing and had asked for á patent for this idea, is it conceivable that he would have succeeded?

Years before, Ridgway had obtained a patent for the physical structure of a "cab" on the rear platform where the conductor was stationed to collect fares and thus "to relieve passengers from the inconvenience of the constant moving to and fro of the conductor." We believe it to be axiomatic that one cannot patent an abstract idea apart from the physical means for putting the idea into practice. Moore shows all the physical means for carrying out the plan of the Ross and McDonald patent. Can it be that a patent can be obtained in 1905 for a car construction 17 years old, by suggesting that the conductor collect the fares on the rear platform? We think not, and especially so when it appears that the suggestion was also old. If, then, there was no exercise of the inventive faculties in locating the conductor upon the rear platform of cars shown in the prior art for the purpose of collecting the fares of passengers at that point, the court should have directed a verdict for the defendant. If the situation was such that a verdict for the plaintiff should be set aside as against the weight of evidence, it was the duty of the court to direct a verdict.

Assuming that it was new at the date of the Ross and McDonald application to station the conductor on the rear platform of the Bernstein or Moore car for the purpose of collecting the fares of entering

passengers, we are unable to believe that a conductor who assumed this position, collected fares and deposited them in a box located near him, became an inventor. Being, therefore, convinced that the patent cannot be sustained, we think the court erred in submitting the case to the jury.

The judgment is reversed.